1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF IOWA

3    _____

4    UNITED STATES OF AMERICA,          DOCKET NO.
                                        3:24-CR-00013-SHL
5          Plaintiff,

6          vs.

7    DAVID ENRIQUE REMIGIO,             Davenport, Iowa
                                        March 12, 2024
8          Defendant.                   12:07 p.m.

9

10   _____

          TRANSCRIPT OF DETENTION HEARING PROCEEDINGS
11
          BEFORE THE HONORABLE STEPHEN B. JACKSON JR.
12                UNITED STATES MAGISTRATE JUDGE

13   APPEARANCES:

14   For the Plaintiff:     United States Attorney's Office
                            BY: MATTHEW A. STONE
15                          Assistant United States Attorney
                            131 East Fourth Street, Suite 310
16                          Davenport, IA  52801

17   For the Defendant:     Office of the Federal Public Defender
                            BY: TERENCE L. McATEE
18                          101 West Second Street, Suite 401
                            Davenport, IA  52801

19

20

21

22            JANET DAVIS, RDR, FCRR, CRR
               Federal Official Court Reporter
23    2120 Capitol Avenue, Room 2226, Cheyenne, WY  82001
                307.433.2154 * jbd.davis@gmail.com
24
     Proceedings reported by realtime stenographic reporter;
25   transcript produced with Computer-Aided Transcription.

1                      <u>I N D E X</u>

2
    <u>EVIDENCE/WITNESSES</u>                                    <u>PAGE</u>
3    GOVERNMENT'S
        Proffer - Mr. Stone                                 3
4    DAVID MURGUIA
        Cross - Mr. McAtee                                  7
5    DEFENDANT'S
    HOPE WOLKENHAUER
6        Direct - Mr. McAtee                               10
        Cross - Mr. McAtee                                 14
7        Redirect - Mr. McAtee                             16
    ARGUMENT
8        Mr. Stone                                         17
        Mr. McAtee                                         18
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings commenced 12:07 p.m., March 12, 2024.)

2        THE COURT:  Good afternoon.  Have a seat, please.

3        Good afternoon.  This case is United States of America

4    versus David Enrique Remigio.  This is 3:24-CR-13.

5        We're present for hearing on the Government's request

6    for detention.  The Government is present and represented by

7    Matthew Stone.  Mr. Remigio appears personally with his

8    attorney, Assistant Federal Defender Terry McAtee.

9        Mr. Stone, how do you plan on proceeding today?

10        MR. STONE:  I plan on proffering.

11        THE COURT:  No witnesses?

12        MR. STONE:  No, Your Honor.

13        THE COURT:  Is your agent available for

14    cross-examination on full proffer?

15        MR. STONE:  Yes, Your Honor.  Detective Dave Murguia

16    is here with me at counsel table and available for

17    cross-examination.

18        THE COURT:  Mr. McAtee, is that acceptable to you and

19    your client?

20        MR. MCATEE:  Yes, Your Honor.

21        THE COURT:  Do you have any witnesses?

22        MR. MCATEE:  Yes, we have one witness, the proposed

23    third-party custodian.

24        THE COURT:  Mr. Stone, you may proceed.

25        MR. STONE:  Thank you, Your Honor.

1          Your Honor, this case happened in October of 2022.

2     Detective Dave Murguia from the Des Moines County Sheriff's

3     Office received a CyberTip from a Kik account that the Kik

4     account had videos of child pornography with it for the

5     CyberTip.

6          There was a subpoena done for the IP address.  That

7     came back to Hope Wolkenhauer at ████████████████████████

8     ████ in Burlington, Iowa.

9          THE COURT:  That came back to what?

10          MR. STONE:  To -- to an apartment in Burlington, Your

11     Honor.  That was the address.

12          THE COURT:  Okay.  I thought you said the name of a

13     person.

14          MR. STONE:  Yes, Your Honor.  The owner of the BDCOM

15     account was Hope Wolkenhauer at this address in Burlington,

16     Iowa.

17          THE COURT:  Would you spell Wolkenhauer?

18          MR. STONE:  W-o-l-k-e-n-h-a-u-e-r, I believe, Your

19     Honor.

20          THE COURT:  And for the benefit of our court reporter,

21     please spell the last name of the detective.

22          MR. STONE:  I've already given it to her, Your Honor.

23          THE COURT:  Thank you.

24          MR. STONE:  After the CyberTip came back to

25     Ms. Wolkenhauer at that address in Burlington, detectives

1   confirmed that the defendant lived there with Ms. Wolkenhauer.

2          A search warrant was executed on that residence on

3   November 15th of 2022.  When the search warrant was executed,

4   the defendant was there along with Ms. Wolkenhauer.

5          As they searched the apartment, the defendant spoke

6   with one of the detectives with the Des Moines County Sheriff's

7   Office.  He admitted to possessing and receiving child

8   pornography.  He told the detective that he had started looking

9   at child pornography when he was in middle school and had never

10  stopped.

11         He told the detective that he used his Kik account

12  along with a social media app called Wickr to obtain and trade

13  child pornography.

14         He also told the detective that some of the images

15  that he had received was someone that he knew.  This was a

16  person named Metallie Gillette.  He had received videos and

17  images of her 3-year-old daughter.  He knew that it was

18  Metallie Gillette because she had tattoos on her fingers, and

19  in these video images depicting the 3-year-old daughter and her

20  genitals, those tattoos on the fingers could be seen.

21         The defendant also told detectives that only one

22  electronic device in the home -- or he only had one electronic

23  device that had child pornography on it.  It was a black

24  TracFone.  It was not his main phone.  This was a separate

25  phone that he used specifically for possessing and distributing

1   child pornography.

2           He then gave that phone -- or showed that phone --

3   where it was to detectives.  They seized that phone.

4           That same day they got another search warrant

5   specifically for that phone and executed it.  They were able to

6   find a folder on that phone labeled "Tally" which is where he

7   said these images would be that showed the 3-year-old daughter

8   of his acquaintance, Metallie Gillette.

9           That led detectives to do an investigation and

10  prosecution of Metallie Gillette.  She's been sentenced to

11  serve time in the Iowa Department of Corrections.

12          Following that day with the defendant's TracFone, the

13  rest of the phone was sent and forensically examined.  They

14  located 144 images and 287 videos of child pornography.  It

15  began -- on the phone the beginning dates were April of 2022,

16  going until the date of the search warrant, which was

17  November 15th, 2022.

18          THE COURT:  That the extent of your proffer?

19          MR. STONE:  Yes, Your Honor.

20          THE COURT:  Do you have cross-examination, Mr. McAtee?

21          MR. MCATEE:  Yes, Your Honor.

22          THE COURT:  Okay.  Detective, please step forward and

23  receive your oath.

24      (Witness sworn.)

25          THE COURT:  Have a seat.

1      DAVID MURGUIA, GOVERNMENT'S WITNESS, CROSS-EXAMINATION

2  BY MR. MCATEE:

3  Q.  So you just heard this proffer from the Government; is that

4  correct?

5  A.  Yes, sir.

6  Q.  So the search warrant was executed on -- or at the

7  residence on November 15th of 2022; is that right?

8  A.  That's correct.  And in the search warrant it also included

9  the vehicle as well.

10          THE COURT:  Excuse me.  Detective, would you tap the

11  mic?

12          Before you continue, would you please state your full

13  name for the record.

14          THE WITNESS:  Yes, David Murguia, M-u-r-g-u-i-a.

15          THE COURT:  Mr. McAtee.

16          MR. MCATEE:  Thank you.

17  BY MR. MCATEE:

18  Q.  Was that address █████████████████████████ in

19  Burlington?  Was that the address?

20  A.  Yes, sir.

21  Q.  All right.  And I think it was the proffer or the -- the

22  proffered testimony that both Ms. Wolkenhauer and Mr. Remigio

23  were present.

24          Is that right?

25  A.  Yes, sir.

1   Q.  And it sounded like Mr. Remigio talked to a member of law

2   enforcement.

3           Is that correct?

4   A.  Yes, sir.

5   Q.  So it sounds like he was cooperative with law enforcement?

6   A.  Yes.

7   Q.  And he also provided his phone to law enforcement; is that

8   right?

9   A.  Yes.

10  Q.  Was Ms. Wolkenhauer also cooperative with law enforcement?

11  A.  She was.

12  Q.  And he was not charged in state court related to this; is

13  that correct?

14  A.  Yes.

15  Q.  He was not charged until he was indicted in federal court;

16  is that accurate?

17  A.  Yes, sir.

18  Q.  And it looks like he was indicted on March 5th of 2024, so

19  a week ago today; is that correct?

20  A.  Yes, sir.

21  Q.  And do you have any indication or any evidence that from

22  November 15th of 2022 until March 5th of 2024, Mr. Remigio was

23  involved in any type of illegal activity?

24  A.  Not to my knowledge, no.

25  Q.  There was some proffer information about this Metallie

1  Gillette, and it was -- did she plead guilty, then, and go to

2  prison?

3  **A.**   She was charged stateside for the sexual assault.

4  **Q.**   And that was of her daughter?

5  **A.**   Yes, that's correct, which was the victim in this case.

6  **Q.**   And she went to prison; is that correct?

7  **A.**   For the sexual assault stateside.

8  **Q.**   And Mr. Remigio has not been charged with any kind of

9  sexual assault; is that right?

10  **A.**   That's correct.

11             MR. MCATEE:  I don't have anything further.  Thank

12  you.

13             THE COURT:  Anything else, Mr. Stone?

14             MR. STONE:  No, Your Honor.

15             THE COURT:  Thank you, Detective.  You can step down.

16  You're excused.

17             Further evidence to come in?

18             MR. STONE:  No, Your Honor.

19             THE COURT:  Mr. McAtee?

20             MR. MCATEE:  Yes.  If I could just have a minute, Your

21  Honor.

22             We would call Hope Wolkenhauer.

23             THE COURT:  Ma'am, please come forward.  You can stop

24  right there, and when you stop there, you will receive the oath

25  from our clerk.

1       (Witness sworn.)

2           THE COURT:  Watch your step.  There's a slight rise.

3           It is important you stay close to the microphone for

4    the court reporter.

5           Would you please state and spell your first and last

6    names.

7           THE WITNESS:  Hope Wolkenhauer, H-o-p-e,

8    W-o-l-k-e-n-h-a-u-e-r.

9           THE COURT:  You may proceed.

10          MR. MCATEE:  Thank you.

11    HOPE WOLKENHAUER, DEFENDANT'S WITNESS, DIRECT EXAMINATION

12   BY MR. MCATEE:

13   Q.   Where do you reside?

14   A.   In Burlington at ███████████████████████████

15   Q.   Who do you reside there with?

16   A.   David Remigio.

17   Q.   How do you know David Remigio?

18   A.   We've been dating for the last six years.

19   Q.   So you've been dating him for six years.

20          Does -- how long has he lived there with you at that

21   address?

22   A.   At that address, I believe we've lived there almost two

23   years.

24   Q.   Has he also been working during that time?

25   A.   Yes, he's worked the whole time.

1   Q.  All right.  Where does he work?

2   A.  Right now he works at WalMart Distribution Center in

3   Mt. Pleasant.

4   Q.  And it sounds like from the earlier testimony -- were you

5   present when law enforcement showed up at your residence on

6   November 15th of 2022?

7   A.  Yes, I was.

8   Q.  Did you cooperate with law enforcement?

9   A.  Yes.

10  Q.  And it sounds like David did too; is that correct?

11  A.  Yes.

12  Q.  Did you and David move between November 15th of 2022 and

13  last week?

14  A.  No.

15  Q.  So you were at the same residence last week; is that

16  correct?

17  A.  Yes, sir.

18  Q.  Is that where he was when he was arrested?

19  A.  Yes, it was.

20  Q.  Have you ever seen Mr. Remigio act in an inappropriate way

21  toward children?

22  A.  No, sir.

23  Q.  I take it -- were you surprised by these charges?

24  A.  Very.

25  Q.  This 3-year-old daughter of a Metallie Gillette, has that

1    child ever been at your residence?

2    A.   No.

3    Q.   If Mr. Remigio is released to your residence -- well, first

4    of all, are you okay with him being released to your residence?

5    A.   Yes, I am.

6    Q.   How big is that apartment?

7    A.   Um, it's probably 400, 500 square feet, two bedroom, very

8    small apartment.

9    Q.   But you said the two of you have been living there for

10   approximately two years?

11   A.   Yes.

12   Q.   Would you sign an order with the Court that he could return

13   to that residence?

14   A.   Yes, I would.

15   Q.   Do you have any firearms in the residence?

16   A.   No, I do not.

17   Q.   Do you have internet-capable devices?

18   A.   I do, yes.

19   Q.   Can you tell the Court what those are?

20   A.   Um, I have a laptop for school; I have a cell phone, and

21   Alexa has online, if that counts.

22   Q.   Are they password protected?

23   A.   They can be, yes.

24   Q.   Are you willing to do that if he's released?

25   A.   Yes, I'm willing.

1  Q.  And it also sounds like there's no parks, schools or

2  daycares located within one mile of your residence.

3       Is that correct?

4  A.  Yes.

5  Q.  What do you do for a living?

6  A.  I work at my mother's daycare, and I'm also a home health

7  aid for a client.

8  Q.  How long have you done those two things?

9  A.  I've been at my mom's daycare since I was 16, and I've been

10 a home health aid for about six months now.

11 Q.  Do any of -- where is that home health care -- or daycare

12 at?

13 A.  I'm really bad with streets.  It is the highway going out

14 of town towards --

15 Q.  I guess what I'm trying to get at, how far is it from your

16 residence?

17 A.  It's probably a 10, 15-minute drive.

18 Q.  Do any of those children ever come to your residence?

19 A.  No, sir.

20 Q.  Do they stay at the daycare?

21 A.  Yes.

22 Q.  Do you ever work from home?

23 A.  No, I do not.

24 Q.  You always go to the daycare?

25 A.  Yes.

1  **Q.**  Does David ever go to the daycare with you?

2  **A.**  No.

3  **Q.**  If David does something he's not supposed to be doing based

4  on the Court's order, would you be willing to notify the Court

5  or the probation office that he's doing something like that?

6  **A.**  Yes, I would.

7  **Q.**  Even though you know that could very well lead to him being

8  rearrested and -- and put back in jail?

9  **A.**  Yes.

10  **Q.**  Do you have any -- have you ever been convicted of a crime

11  before?

12  **A.**  No, I have not.

13          MR. MCATEE:  I don't have anything further.

14          THE COURT:  Mr. Stone, do you have any questions?

15          MR. STONE:  Yes, Your Honor.

16                          **CROSS-EXAMINATION**

17  **BY MR. STONE:**

18  **Q.**  Good afternoon, Ms. Wolkenhauer.

19  **A.**  Hi.

20  **Q.**  So the whole time that you were dating Mr. Remigio, you

21  were unaware that he was looking at child pornography?

22  **A.**  Correct.

23  **Q.**  And were you aware that he had this second separate phone

24  that was not his main phone?

25  **A.**  No.

1  Q.  So he had this other phone for a certain period of time,

2  and you had no idea that he had it and was using it to look at

3  child pornography?

4  A.  Yes.

5  Q.  And had there been another time when you've been contacted

6  by detectives about potential child pornography at your

7  residence?

8  A.  Yes.  Before the search warrant at our apartment, I was

9  called by Burlington Police Department to come in for

10 questioning, and they had questioned me about child pornography

11 on my IP address.

12 Q.  And that was -- was that earlier that same year, back,

13 like, in May of 2022?

14 A.  I'm not sure of the exact date.

15 Q.  But it was a few months prior to this incident, correct?

16 A.  Yes.

17 Q.  So even after that, then, you were still unaware, then,

18 that -- you never looked into it further with David or asked

19 him about it?

20 A.  I asked him about it, but he denied anything at that time,

21 and I just didn't think that he could be -- it could be

22 possible.

23 Q.  A few months later, of course, they show up again on the

24 search warrant and find all this child pornography?

25 A.  Well, I wasn't sure what they found.  I just know they took

1    all of the devices.

2            MR. STONE:  Thank you, Your Honor.  Nothing else.

3            THE COURT:  Mr. McAtee.

4                      **REDIRECT EXAMINATION**

5    **BY MR. MCATEE:**

6    **Q.**  Were you cooperative with law enforcement at that -- during

7    that previous interview of you?

8    **A.**  Yes.  I answered multiple questions and talked to them

9    about whatever they -- they needed to know.

10   **Q.**  All right.  And you understand now you would be under a

11   court order as third-party custodian to -- you would have to

12   turn David in if he does something he's not supposed to be

13   doing?  Do you understand that?

14   **A.**  Yes, I understand that.

15   **Q.**  Were you under any kind of similar order prior to that --

16   prior to this?

17   **A.**  No.  We didn't hear anything from anybody after the search

18   warrant, so we just stayed in place because we didn't want to

19   make any -- any confusion.

20   **Q.**  All right.  So you didn't leave or change addresses or move

21   out of town or anything like that?

22   **A.**  No, sir.

23           MR. MCATEE:  I don't have anything further.

24           THE COURT:  Ms. Wolkenhauer, do you know the status of

25   Mr. Remigio's job and employment, if he can return?

1          THE WITNESS:  His job said that he would have to talk

2   to them about his charges when he returned.

3          THE COURT:  So it is unknown if he can return?

4          THE WITNESS:  He can return for now, but he has to

5   talk to them.

6          THE COURT:  All right.  Thank you.

7          Mr. McAtee, further questions?

8          MR. MCATEE:  No, Your Honor.

9          THE COURT:  Mr. Stone?

10         MR. STONE:  No, Your Honor.

11         THE COURT:  Okay.  You can step down.  Watch your step

12  down, please.

13         Mr. McAtee, do you have further evidence?

14         MR. MCATEE:  No, Your Honor.

15         THE COURT:  Mr. Stone, do you have any further

16  rebuttal?

17         MR. STONE:  No, Your Honor.

18         THE COURT:  Anything that you want by way of a closing

19  statement, Mr. Stone?

20         MR. STONE:  Your Honor, we're just asking for

21  detention.  This is a presumption case under 3142(e)(3)(E).

22  Obviously, this case, Your Honor, is slightly different from

23  other receipt and possession cases because we have a known

24  victim, someone known to the defendant, that he had received

25  videos and images of.

1          I also think, Your Honor, that given the circumstances

2    of this being the release of Mr. Remigio going back to the

3    apartment where he'd been doing this under the same

4    circumstances where clearly he had another phone that was

5    unknown to anyone else specifically for this purpose -- I don't

6    think that would be a good release plan for him, Your Honor,

7    and I do think he would still be a danger to the community,

8    given his conduct, the length of the time he told the detective

9    he had been doing this, since middle school, and never stopped,

10   Your Honor, so we would ask for detention.

11         THE COURT:  To be clear, you're not arguing flight; is

12   that right?

13         MR. STONE:  That's correct, Your Honor.

14         THE COURT:  Thank you.

15         Mr. McAtee.

16         MR. MCATEE:  Your Honor, we would ask that he be

17   released to the third-party custody of Ms. Wolkenhauer.  She

18   was a very credible witness.  She's already cooperated with law

19   enforcement twice.  It sounds like she's sat down and answered

20   questions for them.  She has no prior criminal record.

21   Mr. Remigio has no prior criminal record.

22         The alleged conduct ended, according to the indictment

23   and to the detective, on November 15th of 2022.  He was not

24   indicted until March 5th of 2024, so approximately 16 months.

25   They didn't move.  They didn't do anything other than continue

1   working, it sounds like.  They didn't attempt to flee or

2   anything of that nature.  Again there's no indication he did

3   anything after November 15th of 2022.

4          He has had that job, and as the testimony was from

5   Ms. Wolkenhauer, he has to go back and talk to them to see if

6   he can remain there.  But he does have other experience

7   working, and he certainly would be employable.

8          He also started classes or courses for sex addiction

9   in December of 2022, so that would have been about a month

10  after this incident with law enforcement.  And he attended -- I

11  think that's a typo.  Obviously it wasn't until November of

12  '24.  But he talked about going two times per month until their

13  transportation issues.

14         It is my understanding they now have a new car.  He

15  would intend to go -- to start up with that again.  He found

16  those classes to be very helpful.  I don't have the exact date

17  that he quit going, but he would -- he would be interested in

18  that.

19         Again, no record, presumed to be innocent, reliable

20  third-party custodian, 29 years of age.  We would ask, based on

21  all of these factors, that he be released.  Thank you.

22         THE COURT:  Thank you.

23         Do you agree there's a presumption, Mr. McAtee?

24         MR. MCATEE:  Yes, Your Honor, for Count One.

25         THE COURT:  Okay.  Thanks.

1    Anything else, Mr. Stone?  It is the Government's

2  burden.

3    MR. STONE:  No, Your Honor.

4    THE COURT:  Okay.  I'm going to take this under

5  advisement, and I will issue a written ruling, but I do want

6  the parties to know and understand the framework for my ruling

7  and my decision.

8    Mr. Remigio, at all times you're presumed innocent, so

9  nothing anyone has said today or that I may say in my ruling

10  changes that presumption.  Rather, I keep in mind -- I must

11  keep that in mind.  I'm required to.

12    In determining whether you would be released or

13  detained, pretrial detention is exceptional.  I must release

14  someone unless I cannot find conditions that will reasonably

15  assure their appearance and reasonably assure the safety of the

16  community.  If I cannot find conditions to reasonably assure

17  those things -- and does that mean guarantee?  But if I cannot

18  find those things, then I'm required by the Act to hold someone

19  in custody.

20    The Government always has the burden of proof.  In

21  this case they argue there's no conditions to reasonably assure

22  the safety of the community.  On that argument it must show by

23  clear and convincing evidence that there are no conditions to

24  reasonably assure the safety of the community.

25    The Government argues there's a presumption in favor

1    of detention based on the nature of the crimes alleged in --

2    Count One, Mr. Stone?

3           MR. STONE:  Yes, Your Honor.

4           THE COURT:  I do find there's a presumption in favor

5    of detention.  What that does is it places on the defendant the

6    burden of producing some credible evidence.  This is a burden

7    of production, and it does not change the Government's burden

8    of proof on the question.

9           I consider four factors in determining the question:

10   the nature and circumstances of the alleged offense, the weight

11   of the evidence against the person, the history and

12   characteristics of that person, and the nature and seriousness

13   of the danger to the community if the person were to be

14   released.

15          I will consider all the evidence presented today.

16   That includes testimony by witnesses, proffer by counsel, and

17   the information in the Pretrial Services Report.

18          I also give weight to the recommendation of the

19   Pretrial Services officers.  In this case their recommendation

20   is for release.  I give their recommendation weight because

21   they supervise people on pretrial release and are the experts

22   in assessing whether someone may or may not be supervisable.

23          If a party does not like my ruling and wants to appeal

24   my ruling, they can do so by seeking review of it to a district

25   judge within 14 days of the order.

1          Pending further order of the Court, Mr. Remigio will

2    remain in the custody of the Marshals.

3          I will -- I will work on my ruling and file that as

4    soon as I can.

5          Mr. Stone, anything else for the Government?

6          MR. STONE:  No, Your Honor.  Thank you.

7          THE COURT:  Mr. McAtee, anything further for

8    Mr. Remigio?

9          MR. MCATEE:  Your Honor, just I neglected to proffer

10   the Pretrial Services Report, but I noticed the Court said that

11   the Court will consider it.  So thank you.

12          THE COURT:  I certainly will consider that, yes.

13          MR. MCATEE:  Thank you.

14          THE COURT:  Okay.  We're adjourned.  Thank you.

15        (Proceedings concluded 12:31 p.m., March 12, 2024.)

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth and that the foregoing pages constitute a

12   full, true and correct redacted transcript.

13

14         Dated this 25th day of April, 2024.

15

16

17

18                         /s/ *Janet Davis*

19                         _____

20              *JANET DAVIS, RDR, FCRR, CRR*
                *Federal Official Court Reporter*

21

22

23

24

25